23-1450 Eastern Missouri Axis Surplus Insurance Company v. TriStar Companies 23-1450 Eastern Missouri Axis Surplus Insurance Company v. TriStar Companies This is a frustrating type of case for both attorneys and courts. It's a policy coverage case, one of many. As the appellee often repeats, there was a small premium in the case. There are not many facts to be put into evidence for a dramatic trial. And most importantly, I think we can all agree that in many respects, the policy is very poorly written. But what we cannot do is give this case less than it's due and to gloss over the applicable law, even if we've read it many times and even if its application is tedious. And that law includes the fact that this is a customer buying insurance. And if at all possible, we have to interpret the policy to give coverage. A customer what? A customer is purchasing insurance. Okay. You had a hyphenated word and I didn't catch the second word. A customer something type of insurance. No, no. You're on it. The customer is purchasing insurance. It's a CGL clause. Exactly. And because it is and because insurance is the point, the policy, if at all possible, needs to be interpreted to provide coverage. Ambiguities have to be resolved in favor of the insurer. Now, I think there's, with all the complexity and the insurance type conditions may create, to me there's a simple answer to this that everybody's ignoring. And that is the legal effect of the declarations page in a policy. Well, I What is it? Just state generally. What does the deck page do in a policy? It generally outlines the coverage and the insurance. Right. Subject to exclusion. It's a basic insurance contract, right? Agreed. Which means that it identifies the insured and the insurer and it specifies the type and it specifies what's insured. I agree, Your Honor. Okay. And so, and it, it, all the terms and conditions simply modify that. Well, Okay. So here we have Well, they could if they're written properly and they don't contradict one another. I don't know. If, if the deck page controls the issue, the deck page wins. Anyway, let's, let's go. I, I now find, with a little self-searching, that Appendix 46 is the applicable deck page to this policy. I don't, I'm not looking at the pages of the appendix, but it's a And then I And that's page 9 of 92 in Document 1-2, which is not, was not helpful, a helpful appendix. And then I look a lot further and on Appendix 70, I get the schedule of locations in this, this operative, operative endorsement. Exactly Your Honor. And And the big fight in the briefs is whether the schedule of locations when it, when it says, of all premises you own, rent, or occupy, was the court wrong to, to apply that generally? But guess what? Page 70 says it is amending the deck page. The policy declarations page is amended as respects location of all premises you own, rent, or occupy. So I go back to the, to the deck page, and the deck page says, in identifying the premises insured, all premises you own, rent, or occupy. So it's not just App, page 70 that says own, rent, or occupy. It is the governing, it amends a governing document that says own, rent, or occupy. Now, to me that means case closed. What's wrong with that analysis? I actually think it's three levels. It's the declaration page, then the endorsement, which does not contain the own, rent, or occupy language, and then the schedule itself. Well, but the schedule, it states, it is amending the deck page. But I don't think it ends the issue, Your Honor, because whether it's the declaration page, or the endorsement, or the schedule of locations, there has to be an interpretation of the contract that is reasonable and that provides meaning to all portions, both The deck page is the contract, and a reasonable interpretation of a deck page that says the premises insured are premises that are owned, rented, or occupied, is that, however amended, it still applies, you still have to own, rent, or occupy a location that is added by amendment to the deck page. Your Honor, whether it's the deck page, whether it's this or that, there's all of the law that requires the courts to look at the entire policy and read it together, but no matter what part of the policy it is, it can't lead to an absurd result. I'm going to ask you, give me a relevant case that talks about all these terms and conditions in relation to the deck page. I have not seen a single case cited in these briefs that address the issue, now down below the difference between the declaration and the endorsement. But it's obvious, because the deck page is the contract, and if you want to argue about modify and so forth, you still are left with the insurance contract being reflected in the deck page. The deck page? Your Honor, you've told me you can't give me a case that refutes that. I can't give you a case that discusses it only in the context of the declaration page. I can't, and we have given you many cases that say that the courts have to interpret the entire contract. Those cases didn't involve this kind of deck page question. Well, I think any insurance. What is the property insured? I think any insurance case considers the declaration page, as you said. It's the contract of insurance. Because it's never in dispute. But, Your Honor, here's the problem. The way that this Court interpreted the policy of insurance, the declaration page, the endorsement, and the schedule of locations, is to say that you have to own, rent, or occupy, specifically my insurer has to own, rent, or occupy it in order for there to be coverage. And that simply is an absurd conclusion, because it makes the policy absurd. Under that reading, there's no less than seven locations. Well, it's not so absurd, just because there's more to it than that, because it ends up by saying to include the following, right? Yeah, then there's a list, okay? And, you know, I get where you can't own the highway, right? And I get where that's the claim. But, the owned property adjacent to the highway, is it identified? Is there a building there that somebody can go back there and look? Well, you can argue that that's covered, right? But it still has to be what? Owned, rented, or occupied? Right. Well, in this case, it is. And I'm jumping to the location itself, not the owned, rented, or occupied. But in this case, there's Highway 270 running east and west, 255 running north. And right there, where they come together, is the warehouse. So I don't know. Do you own, rent, or occupy the warehouse? But the owned, rent, or occupied can't just apply to that location 16. It has to apply to them all. And if it applies to them all, who owns, or rents, or occupies St. Charles, Missouri? No one. No one can. Now, what AXIS says in its response is, quote, it's reasonable to assume that each of the scheduled locations is owned by another name to assure. That's wrong for two reasons. First of all, are we really reasonably going to assume that one other named insured owns St. Charles, Missouri? Of course not. But the bigger flaw is that are we at the point now where we're granting summary judgment on the basis of assumptions? There's not one shred of evidence in the record that any other insured owns any other of the scheduled locations. AXIS didn't present that evidence. So summary judgment should not have been granted. If they have that evidence, they can now present it at trial. But interpretations can't be saved by assumptions with no evidence behind it. And similarly, they argue that our point No, Evan, I thought your client agrees there wasn't owned, rent, or occupied. TriStar did not own, rent, or occupy this delivery hub. This delivery warehouse. This delivery warehouse. It never did, but certainly not, well, maybe. Not during the policy period. Not at the time that the tornado hit. Not during the policy period, not during the time the tornado hit. But there's no evidence that any other insured owned, rent, or occupied any of the locations. And you've got to have that evidence to make an assumption. That's not relevant. Well, I think it is relevant, Your Honor. If there's no evidence that no insured owns, rents, or occupies any of the locations, then how can you make an argument that that is the controlling language? Well, then they're not covered. Well, then we have an insurance policy that doesn't cover anything. They may be listed, but they're not covered. Well, then the insurance policy covers nothing. I think that's an absurd result. Well, of course it covers something. There's no evidence that there's any other owned, rented, or occupied. You're saying that there's nothing on the page 70 that was not at some point in time owned, rented, or occupied by your client as lessor? Or any of the other insureds. Axis's point, this is their argument, not mine. Axis's point is it's reasonable to assume that each of the scheduled locations is owned by another named insured. If not, then why is it on the scheduled locations? But the fact of the matter is this is on summary judgment where the non-movement, and they did not introduce one fact to support that assumption. So summary judgment is inappropriate. They introduced the deck page. I understand. But that doesn't tell you that other insureds owned any of the scheduled locations. They also argue that Tristar's interpretation, that is granting coverage, would be absurd because it would Why does the court have to decide any issue other than the one before it? It doesn't. What this court, and in fact the district court should have decided, is whether there is a dispute to a single material fact granting my client, the non-movement, reasonable inferences and looking at the facts in the light most favorable to it. And to me, when you do that, this case needs to be remanded and sent for trial. It is not a summary judgment case. What's the disputed fact? I'm sorry? What's the disputed fact? The disputed fact is we have locations 16 and 17, which define an area, a small rectangle, with one highway running east to west, two roads, one highway running north to south. And within that rectangle and right next to the highways that are identified is the delivery station warehouse. I think it's clear that it's included in these locations, but there is at least a dispute as to a fact. Counsel, you still have the limiting language of owned, rent, or occupied. I understand, but I believe that the court's interpretation of that is absurd because it renders most of the schedule of locations meaningless, and there's not a single argument to suggest that anyone owns, rents, or occupies Warrington or Highway 270 or 55 or the City of Missouri. You can't make an argument that gives meaning to those locations unless you take own, rent, and occupy for what it is, which is a non-exclusive, non-limiting, generic description of having a connection to the locations. Own, rent, or occupied simply means any connection? It means a connection. That is how I read it. It doesn't mean owned, it doesn't mean rented, it doesn't mean occupied? In the context of this policy, if you're going to give meaning to each provision, it is not a limiter. The other issue, Your Honor, that the district court specifically found on was the exclusion of the products completed operation. And you've read the brief, but what I will say about this is all of the cases interpreting arising out of, we all agree, interpret arising out of very broadly to mean having its origin in or in the older public place interrelated or flowing from. And I find it interesting that every single case that the district court or access relies on is an exclusion case. And in those cases, the language was interpreted very, very broadly to exclude coverage. Here we have a case of an exception to an exclusion that uses the arising out of. And if it's going to be interpreted that broadly, in fact, in the older public case, it was interpreted so broadly that they said virtually all claims are excluded. If it's that broad in an exclusion, how can it be any less broad in an exemption? Here we have a transportation warehouse. You've got to look at the allegations in the petition. Any analysis that a tornado is not caused by the transportation of property is very superficial. Please look at the allegations in the petition, which says it is, quote, a delivery station to, quote, deliver goods to customers and to, quote, store, ship, and deliver goods. And there are allegations that the injured were deliverers of property and that Amazon refused to evacuate them, made them remain in a delivery warehouse that was allegedly unsafe. When you take those allegations into account, this arises out of under the law. It is interrelated to, it flows from, it has its origins in the transportation of property interpreted very broadly for insureds the same way it has been interpreted for insurance companies. Thank you, Raj. Mr. Merrick. Good morning, Your Honors, and may it please the Court, I'm Michael Merrick, and I represent Access Services Insurance Company. You're going to have to speak up for me. You're going to have to speak up for me. I can't hear a word. My apologies. Neither financial processing nor TriStar purchased coverage from Access for suits arising from work in connection with the Amazon warehouse facility. I still can't hear you, Counsel. I don't know if that mic is even effective. Let me try to get a little closer, Your Honor. Is this better? Okay. Thank you. Access never sold a policy of insurance that provided coverage for the completed work of TriStar after it concluded all its involvement. So you're starting with the exclusion here? I'm explaining that they never purchased coverage for what they seek, that is for bodily injuries and death cases associated with the tornado. Okay. Let me turn, as you did, Judge Loken, to the owned, rented, or occupied language. You are correct that the pages you cited from the record, the declarations at page 46 and at page 70 are really stating one and the same, that it's required that for coverage to be afforded under the policy, it must be with respect to premises, the insured, here TriStar, owned, rented, or occupied. It's stated in both places. In the page 46, the declarations you referred to, you'll see below various different properties that are identified, and then you see them listed somewhat differently in page 70 just by address. Okay? Now, something very important. Well, 70 says added to. To include. You can say they're restatements, it doesn't matter. Yeah, yeah. To include, that simply provided greater specificity to the properties that were owned by one of the insureds. There's no expansion of the areas? No, and even, no, it doesn't matter either way. We'll get to what 16 and 17 are. We don't think it's expanded at all. And what I'd like to do is focus the court just quickly on what was happening in mid-2021. The policy didn't exist as of that time. But as of that time, TriStar was completely done with the Amazon facility. Its work was completed. It had been paid. It had nothing further to do with the facility. So in mid-2021, financial processing went about purchasing the access policy. In connection with that, it did not seek to buy professional liability insurance. It did not seek to buy completed operations insurance, which was the type that might extend coverage beyond the completion date of a policy. That's more expensive coverage than premises coverage for vacant land. We've made the point about premium, not to excuse the language of the policy at all. It's clearly unambiguous. But to put things in context, this whole policy was a $1,900 premium. And for the location that they pin all their hopes on, Location 17, which doesn't provide coverage, for reasons I'll explain, they paid $33. So it's a far more limited type of policy than they're trying to get. They may have coverage for this elsewhere, and I suspect they do. They simply don't have it under the access policy. But when they were – Is Location 17 the triangular piece of property that was bordered by the highways that was discussed earlier? Yeah. It has, Judge Graz, it has a description. And you need to know where that description came from. Well, the reason I ask is what's the purpose of that coverage? What's in there? Well, let me tell you how the language came to be, and then maybe I'll explain. The question, it came from the insured. The broker provided all the language on locations. And this is made clear by the affidavit of Rebecca Leitz. Now, her affidavit, which is located in the record of 1168, explains how these locations with the highways and the towns and all the other things you see there, how they came into being. They came from the insured's broker. These weren't access's creation. They were provided to access's underwriter by the insured's broker. It really doesn't matter who created them. It matters what's in the policy. Well, it only does insofar as they claim, you know, some protection on account of supposed ambiguity. The policy isn't ambiguous. But it does matter in the sense that they supplied the language they now want to say is unclear and we somehow get the benefit of it. So, if you take a look at the Leitz affidavit, and particularly the page 758 of the record, you will see an email. And, by the way, location 17, so we're clear, is the only location in this entire policy which bears the city of Edwardsville. So that's why they pin their hopes on this with the various highways and so on and so forth. But the page 758 of the record is an email after the policy. 16 has Madison. No, 16 has Madison, so that has nothing to do with the warehouse. But naming, why? They're like Google. Why does it matter that only one, that city is only named once? St. Charles is named and Madison is named. Well, it matters because where the tornado hit was in Edwardsville. So the warehouse cannot be encompassed within any location as a matter of common sense and law because the other locations are not Edwardsville. So what we have then, after the policy was issued. Now, both layers are arguing, Kate, things that aren't before us. The district court had to decide one specific coverage question, and it did. And ambiguities and speculation and lack of clarity elsewhere in the policy and who it could be applied for and against. I don't understand the relevance of that. That's the way insurance disputes get talked about. Well, I agree with you because the policy is clear. And I think you honed in on the. . . Well, it's not. . . It may be not clear in many other ways. I certainly don't understand what Judge Graz asked about. Why? But if a lot of locations were thrown in there that don't have any practical implication, but this one turns out because of where a tornado hit to cause a coverage dispute, you decide that dispute. All right? You don't worry about all the other disputes that might or might not arise under this policy and don't seem to have a clear answer under this. The crazy way it's written. Well, I think that there is a . . . And I think you got to it in your questions of my colleague. The promises to be covered have to be owned, rented, or occupied. And it's conceded on the record this morning and elsewhere that TriStar never owned, rented, or occupied the property, the Amazon warehouse, at any time during the policy period or when the tornado hit. Yeah. So that is . . . That's the end of the discussion in many ways. You're insuring somebody in the business of being a lessor and probably a developer or someone who is working with developers. And so it's moving in and out of properties all the time. And a lessor, while it's acting as lessor, is going to have an interest that is owned, rented, or occupied. That's certainly one aspect of the coverage. And it extends coverage to ownership, too. So the two parcels or the two locations that are being talked about here, 16 and 17 . . . As we said, 16 isn't even in Edwardsville. It's a long ways away. 17 is supposedly in Edwardsville. But it was related, it was represented to access in exhibit 750 or page 758, that it was vacant land. And it was not currently occupied. It was going to be developed in the future. It's right there on the face of the document requesting coverage. What then happened was verbatim, this word for word, period for period, comma for comma, this language at the insurance request was included within the policy after it was represented that it was vacant. TriStar cannot credibly stand before this court and say, now we get coverage for a fully developed Amazon warehouse after it told access that what it was seeking coverage for was vacant land. So the description is kind of beside the point. It's recognized, admitted on the record, that the Amazon facility simply was not vacant land. And that's what Judge Fleisig found below, and it's common sense. So if you look to the way the policy came to be, one of the things I hear my colleagues saying is, you know, protect us, give us the benefit of the doubt because the identity of access here is an insurer. But the source of any lack of clarity comes from them. And this was a policy that was put together, again, by a contractor of access that did the underwriting for modest premium. I think, counsel, you're mixing rules of construction there. We don't construe documents against the drafter. We construe them against the insurer. There is a difference. Well, there is a decided difference, Your Honor, but the genesis of that rule is that in most instances, the drafters of the language of insurance policies are the insurance company. I don't disagree, but it's sort of beside the point. Well, I think it is because there's no ambiguity, so we don't even get to that. But if you look, the LIHPS affidavit, I want to make something clear here. The LIHPS affidavit is uncontroverted. They never took her deposition. They never submitted a contrary affidavit. And so what stands of record and undisputed is that it was told to access in the underwriting process that both locations, 16 and 17, were vacant land. There's no dispute over that fact. And the reason I point out how this came to be is that, Your Honor, I don't believe they stand in a position. We looked for a case. I don't think there is one where the insurer provided the language and then came in and said, we get protection from that. Sort of an I got you, because our description of the vacant land wasn't as precise as it could be. There's no way you can connect up that description to an Amazon property owned, rented, or occupied by TriStar. It's just not the case, so they don't get coverage. Now, there was mention made of the other ground, and that takes care of the owned, rented, occupied issue. It takes care of the location 16 and 17 issue. And the district court properly ruled against them and entered judgment on both. Now, the products completed operation exclusion has also been discussed. And that, too, like the district court said, provides protection to access against this claim for coverage. Arising out of the transportation of property is what they hang their hat on. That, in the classic sense, because products completed operations coverage is for product manufacturers and those who conduct operations, such as construction contractors. The example you see often is that a product manufacturer puts stuff on the back of a truck, and let's say resin, and it leaks on the roadway and there's an accident. That's the transportation of property, and that's what's contemplated by this exception. The rule under Missouri law, as this court knows, is that arising out of an insurance contract means more than, but for, but less than proximate causation. And there are all kinds of cases that say that. I would submit that the most analogous instructive case is the Patel case, which you, Judge Loken, wrote, and you, Judge Gross, participated in. It was a 2019 decision. It was a drive-by shooting. And the victim claimed uninsured motorist coverage under his automobile policy. And the question there was whether or not the drive-by shooting arose out of the use of an automobile. And applying the test of originating from, having origin in, you know, the various different formulations that the Missouri courts have used, this court found that the discharge of the gun was unconnected to the vehicle. I would suggest that in this case, the connection between the transportation of property and the deaths and injuries caused by the tornado is far more attenuated. As Judge Fleisig found, there simply is no connection within the meaning of this exception to the product's completed operations hazard. Does the court have any further questions of me?  Thank you, Your Honors. We respectfully request that the judgment of the district court be affirmed. Thank you. We'll give you a minute for rebuttal. Thank you, Bowman. Your Honors, the only thing I'd like to address, I spent that time, Judge Loken, thinking about what you said. And I think I understand your point. We have here one insured and one policy. And all that the district court was tasked with was making a decision about whether the policy covered that one insured or not. I think that's what you're saying. You'll tell me. I'm sure if not. But here's where we disagree, Your Honor. I don't believe it's the district court's job to decide the policy in such a way that it may make sense for one insured, but would be absurd more generally applied to anyone else. And I would tell you that respectfully, the Missouri case law concerning insurance coverage does not say that you have to interpret a policy altogether in a way that makes sense for one insured that's in front of us today. I think the task under Missouri law is to interpret a policy so that it makes sense. And if you include own, rent, or occupy to include locations like Warrington, St. Charles, Missouri, or Highway 270, this policy makes no sense. Thank you. I ask that you reverse and remand. Thank you, Counsel. Interesting, unusual coverage issue, as so many of them are. And the argument's been helpful. It's well briefed. We'll take it under advisement.